UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:23-cr-00058-JPH-TAB |
| BRADLEY JOE RUSSELL, | ) ) -01 |
| Defendant. | ) ) |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT**

Defendant Bradley Russell is charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Mr. Russell has filed a motion to dismiss the indictment, arguing that § 922(g)(1) violates the Second Amendment both on its face and as applied to him. Dkt. [47]. For the reasons below, Mr. Russell's motion is **DENIED**.

## I.
## Facts and Background

When evaluating a motion to dismiss an indictment, the Court assumes that the indictment's factual allegations are true and "view[s] all facts in the light most favorable to the government on a motion to dismiss." *United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999).

Mr. Russell was indicted on one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Dkt. 17 at 1. The indictment alleges that Mr. Russell has one prior state felony conviction from 2004 for dealing in cocaine. *Id.* The following additional facts are not disputed in the parties' briefs:

1

- This drug trafficking conviction did not involve the use of a firearm. *See* dkt. 48 at 28; dkt. 53 at 1, 21.

- Mr. Russell has three misdemeanor convictions that also did not involve the use of a firearm: operating a vehicle with a blood-alcohol content of .08 or more; operating a vehicle while intoxicated endangering a person; and domestic battery. *See* dkt. 48 at 28; dkt. 53 at 1, 21 (citing pretrial services report at dkt. 14).

Mr. Russell has filed a motion to dismiss the indictment against him. Dkt. 47.

## II.
## Motion to Dismiss Standard

Under Federal Rule of Criminal Procedure 12, a defendant may challenge the sufficiency of an indictment "without a trial on the merits" by arguing that the indictment fails to state an offense. Fed. R. Crim. P. 12(b)(1), (b)(3)(B)(v). On a motion to dismiss, "[a]n indictment is reviewed on its face, regardless of the strength or weakness of the government's case." *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010). "One basis for a Rule 12(b)(3)(B) motion to dismiss is that the charged offense is based on an unconstitutional statute." *United States v. Polk*, No. 1:23-cr-00166-JMS-TAB, 2024 WL 4216039, at *1 (S.D. Ind. Sept. 17, 2024).

## III.
## Analysis

### A. The Second Amendment

"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. "[W]hen the Second Amendment's plain text covers an

2

individual's conduct, the Constitution presumptively protects that conduct."[1] *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17 (2022). So, to justify a restriction on that conduct, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* In other words, the government "must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds" of the Second Amendment. *Id.* at 19.

When confronted with a regulation that would have been "unimaginable at the founding," courts must compare that regulation to "relevantly similar" historical regulations to determine whether the modern regulation at issue is "consistent with the Second Amendment's text and historical understanding." *Id.* at 26–27. A modern regulation is "relevantly similar" to a historical one when it imposes a "comparable burden on the right of armed self-defense," as measured by "*how* and *why*" those regulations burden the right. *Id.* at 29 (emphasis added).

Most recently, the Supreme Court in *United States v. Rahimi* stated that courts must evaluate whether a challenged modern regulation is "'relevantly similar' to laws that our tradition understood to permit" to determine "whether the challenged regulation is consistent with the principles that underpin our

---

[1] Initially, Mr. Russell and the government dispute whether the Second Amendment's plain text covers the conduct prohibited by § 922(g)(1). *Compare* dkt. 48 at 6–8, *with* dkt. 53 at 8–11. Neither the Supreme Court nor the Seventh Circuit have addressed this question squarely. In resolving Mr. Russell's motion, the Court assumes without deciding that the Second Amendment's plain text covers the conduct prohibited by § 922(g)(1).

3

regulatory tradition."[2]  602 U.S. 680, 692 (2024) (quoting *Bruen*, 597 U.S. at 29).  Firearm regulations therefore are not "trapped in amber," so even if "a challenged regulation does not precisely match its historical precursors, 'it still may be analogous enough to pass constitutional muster.'"  *Id.* at 691–92 (quoting *Bruen*, 597 U.S. at 30).  In other words, a modern regulation must "comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin'" with a historical analogue.  *Id.* at 692.

### B. Facial challenge to § 922(g)(1)

The statute prohibiting possession of a firearm by a convicted felon provides, in relevant part:

> It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).  Mr. Russell argues that this provision is facially unconstitutional because there is no tradition in this country "of restricting people with felonies from possessing firearms," even people "feared to be

---

[2] To the extent Mr. Russell argues that a different analogical standard from *Bruen* applies here, dkt. 48 at 11, it does not.  *Rahimi* provides the latest—and controlling—restatement of the Court's Second Amendment methodology.  *Rahimi* also confronted facts more analogous to the facts here than did the *Bruen* Court.  *Compare Rahimi*, 602 U.S. at 700 (upholding constitutionality of § 922(g)(8), another provision of the same statute as § 922(g)(1)), *with Bruen*, 597 U.S. at 11 (finding New York's public-carry licensing regime unconstitutional).

4

dangerous." Dkt. 48 at 2. He contends that the government cannot point to a sufficiently similar historical analogue that suggests felons could be permanently disarmed like they are under § 922(g)(1). *Id.* at 11, 23. The government responds that § 922(g)(1) is constitutional on its face because disarming "dangerous" individuals—like felons—is consistent with the country's history of firearms regulations. Dkt. 53 at 11.

To defeat Mr. Russell's facial challenge, the government "need only demonstrate that" § 922(g)(1) is "constitutional in some of its applications." *Rahimi*, 602 U.S. at 693. To determine whether § 922(g)(1) passes this test, this Court looks to Supreme Court cases involving challenges to other firearms regulations.

To start, the Supreme Court in *Rahimi* reiterated that prohibitions "on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" *Id.* at 699 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626, 627 n.26 (2008)); *see McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons' . . . . We repeat those assurances here." (quoting *Heller*, 554 U.S. at 626–27)); *cf. Bruen*, 597 U.S. at 21 (reiterating the *Heller* Court's recognition that "[l]ike most rights, the right secured by the Second Amendment is not unlimited" (citing *Heller*, 554 U.S. at 626)). These cases do not suggest or hint that the Supreme Court will find § 922(g)(1) unconstitutional. On the contrary, the Supreme Court has consistently

5

expressed the view that prohibiting felons from possessing firearms is "presumptively lawful." *Heller*, 554 U.S. at 626, 627 n.26.

Nonetheless, the Supreme Court has not directly decided the constitutionality of § 922(g)(1). *See United States v. Jackson*, 110 F.4th 1120, 1129 (8th Cir. 2024) ("We think it more likely that the Court presumed that the regulations [including § 922(g)(1)] are constitutional because they are constitutional, but termed the conclusion presumptive because the specific regulations were not at issue in *Heller*."). So here, this Court looks to *Bruen* and *Rahimi* to determine whether § 922(g)(1) comports with our country's tradition of firearm regulation.

In *Rahimi*, the Supreme Court upheld the constitutionality of § 922(g)(8), which prohibits individuals subject to a domestic violence restraining order from possessing a firearm. 602 U.S. at 700. Importantly, § 922(g)(8) applies only after a finding that the individual "represents a credible threat to the physical safety" of an intimate partner or child. *Id.* at 685 (quoting § 922(g)(8)). In rejecting a facial challenge to § 922(g)(8), the Supreme Court recognized that our country's "tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Id.* at 700.

Two historical analogues supported that conclusion. The first was surety laws, which provided a mechanism for magistrates "to require individuals suspected of future misbehavior," including misuse of firearms, "to post a bond," facing forfeiture of the bond if the misbehavior did in fact occur. *Id.* at

6

695.  And the second was "going armed" laws, which "provided a mechanism for punishing those who had menaced others with firearms."  *Id.* at 697.  Although § 922(g)(8) is "by no means identical to these founding era regimes," it didn't "need to be."  *Id.* at 698.  That is because the statute is "'relevantly similar' to those founding era regimes in both why and how it burdens the Second Amendment right."  *Id.* (quoting *Bruen*, 597 U.S. at 29).

The Supreme Court therefore found that § 922(g)(8) "restricts gun use to mitigate demonstrated threats of physical violence, just as the surety and going armed laws do."  *Id.*  This did not mean that a defendant could be disarmed "simply because he is not 'responsible'"—the Supreme Court rejected this argument from the government.  *Id.* at 701–02.  Rather, the throughline of *Rahimi*'s historical analysis is that "our Nation's tradition of firearm regulation distinguishes citizens who have been found to pose a credible threat to the physical safety of others from those who have not."  *Id.* at 700.  Under *Rahimi*, felons "who have been found to pose a credible threat to the physical safety of others" may be disarmed.  *Id.*

Other courts addressing the question have held that this reasoning applies with equal force to § 922(g)(1).  *See, e.g.*, *United States v. Lee*, No. 1:23-cr-00103-JRS-MJD, dkt. 92 at 9 (S.D. Ind. July 9, 2024) ("If, as *Rahimi* holds, the government can disarm individuals who threaten others' safety, and felons are deemed threatening, as the fact of § 922(g)(1)'s passage implies, then there is no constitutional problem with the law—it is consistent with 'tradition.'"); *United States v. Williams*, 113 F.4th 637, 663 (6th Cir. 2024) (upholding §

7

922(g)(1) under *Rahimi* because "[t]he history reveals that legislatures may disarm groups of people, like felons, whom the legislature believes to be dangerous—so long as each member of that disarmed group has an opportunity to make an individualized showing that he himself is not actually dangerous"). So, under *Rahimi*'s reasoning, § 922(g)(1) is constitutional when applied to felons "who have been found to pose a credible threat to the physical safety of others." *Rahimi*, 602 U.S. at 700. That is enough to defeat a facial challenge because the government "need only demonstrate" that § 922(g)(1) "is constitutional in some of its applications." *Id.* at 693.

    Last, Mr. Russell argues that § 922(g)(1) is facially unconstitutional because history at best supports only temporary disarmament of felons—not permanent disarmament like under § 922(g)(1). *See* dkt. 48 at 11–23, 28. The Supreme Court in *Rahimi* noted approvingly that, like the historical analogue of "surety bonds of limited duration, Section 922(g)(8)'s restriction was temporary as applied to Rahimi" because it only applied to him while he was subject to a restraining order. 602 U.S. at 699; *see also id.* at 713 (Gorsuch, J., concurring) ("We do not resolve whether the government may disarm an individual permanently."). Here, the same statutory framework that prohibits convicted felons from possessing firearms provides multiple ways by which such persons may regain the right to possess firearms and no longer be subject to § 922(g)(1)'s prohibition. *See* 18 U.S.C. § 921(a)(20) ("Any conviction [for purposes of disarmament under § 922(g)(1)] which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored

8

shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms."); *see also United States v. Vaughns*, No. 22-cr-00636, 2023 WL 8258575, at *7 (N.D. Ill. Nov. 29, 2023) (individuals subject to § 922(g)(1) may "seek administrative relief and regain their right to bear arms"); *Polk*, 2024 WL 4216039, at *5.

So, under § 922(g)(1)'s statutory scheme, there are at least some convicted felons who may have their right to possess a firearm restored. Section 922(g)(1) therefore is not the permanent, unchallengeable disarmament that *Rahimi* did not address. Under *Rahimi*, § 922(g)(1)'s prohibition on the possession of firearms by convicted felons is constitutional because it accords with our country's tradition of temporarily disarming people who pose a credible threat to others' physical safety. *See* 602 U.S. at 700. That is enough to defeat a facial challenge on this argument. *Id.* at 693.

In sum, to prevail on the facial challenge under *Rahimi*, the government "need only demonstrate" that § 922(g)(1) "is constitutional in some of its applications." *Id.* And under *Rahimi*'s reasoning, § 922(g)(1) is constitutional when applied to felons "who have been found to pose a credible threat to the physical safety of others." *Id.* at 700. That narrow application is enough for § 922(g)(1) to survive Mr. Russell's facial challenge.

9

### C. As-applied challenge to § 922(g)(1)

Mr. Russell also challenges § 922(g)(1) as applied to him.[3] He argues that § 922(g)(1) is unconstitutional as applied to him individually because his predicate felony conviction does not "suggest that he is particularly 'dangerous,' or otherwise subject to firearm restrictions like those targeted at the founding." Dkt. 48 at 28. The government responds that Mr. Russell's criminal history sufficiently shows that he is dangerous and thus can be disarmed. Dkt. 53 at 21–25.

Neither the Supreme Court nor the Seventh Circuit have provided a framework for evaluating individual dangerousness in as-applied challenges. In *United States v. Gay*, a decision predating *Rahimi*, the Seventh Circuit rejected an as-applied challenge to § 922(g)(1). 98 F.4th 843, 846–47 (7th Cir. 2024). There, the court explained that the defendant's 22 felony convictions—including aggravated battery of a peace officer and possessing a weapon while in prison—showed that he was not one of the "law-abiding, responsible citizens" who, under *Bruen*, possesses Second Amendment rights.[4] *Id.* (quoting *Bruen*, 597 U.S. at 26). Additionally, the court reasoned that the defendant,

---

[3] The government argues that as-applied challenges cannot be brought against § 922(g)(1). Dkt. 53 at 22–24. The Seventh Circuit in *United States v. Gay* "assume[d] for the sake of argument" without deciding "that there is *some* room for as-applied challenges" to § 922(g)(1). 98 F.4th 843, 846 (7th Cir. 2024). The Supreme Court in *Rahimi* decided an as-applied challenge to § 922(g)(8). *See* 602 U.S. at 700. The Court therefore assumes without deciding that as-applied challenges to § 922(g)(1) are not foreclosed.

[4] *Rahimi* seems to cast doubt on looking to *Bruen*'s "law-abiding, responsible citizens" language, as *Rahimi* held that the defendant could not be disarmed "simply because he is not 'responsible.'" *Rahimi*, 602 U.S. at 701–02.

10

since he was a parolee, "lack[s] the same armament rights as free persons."  *Id.* at 847.  In the absence of a controlling Supreme Court or Seventh Circuit framework, this Court looks to decisions of other circuit courts.  The Sixth Circuit, after a thorough historical review, developed a framework that—in conjunction with *Gay*'s reasoning—is instructive for evaluating dangerousness.  *Williams*, 113 F.4th at 658–61 (explaining that "the founders' instinct that some crimes are more dangerous than others maps well onto the Nation's early 20th-century regulatory framework," which was the direct predecessor to the version of § 922(g)(1) in effect today).

Under the *Williams* framework, "legislatures may disarm groups of people, like felons, whom the legislature believes to be dangerous—so long as each member of that disarmed group has an opportunity to make an individualized showing that he himself is not actually dangerous."  *Id.* at 663.  So, when the analysis turns to that individualized question, the defendant bears the burden of showing he is not dangerous.  *Id.* at 657.

*Williams* identified three categories of predicate felonies that provide guideposts for assessing a defendant's relative dangerousness.  *See id.* at 658–59.  The first category is crimes against the person, like murder, rape, assault, and robbery, which "speak directly to whether an individual is dangerous."  *Id.* at 658; *see also id.* at 659 ("[T]he history of § 922(g)(1) shows that it grew out of concern for guns in the hands of dangerous criminals.  In identifying that class, the Act's creators relied on historical notions of crimes against the person.").  The second category includes crimes that are not crimes against the

11

person, but "may nonetheless pose a significant threat of danger." *Id.* at 659. Crimes in this category, like drug trafficking and burglary, "do not always involve an immediate and direct threat of violence against a particular person," but these crimes "pose a significant threat of danger" because they pose a danger to the community and often increase the odds of a violent confrontation. *Id.* The final category includes crimes that "cause no physical harm to another person or the community," *id.* at 659, like mail fraud, *see Kanter v. Barr*, 919 F.3d 437, 440 (7th Cir. 2019), or making false statements, *see Range v. Att'y Gen.*, 69 F.4th 96, 98 (3d Cir. 2023) (en banc), *vacated and remanded sub nom.*, *Garland v. Range*, 144 S. Ct. 2706 (2024) (remanded for further consideration in light of *Rahimi*).

By enacting § 922(g)(1), Congress disarmed felons with felony drug trafficking predicates like Mr. Russell's. Those predicate felonies fit squarely within *Williams*'s second category of crimes, which justifies a finding of danger. Like the court in *Williams* observed, drug trafficking is a prime example of a crime that can pose a danger to the community and can increase the odds of a violent confrontation with others. 113 F.4th at 659; *see Jackson*, 110 F.4th at 1122, 1125 (rejecting as-applied challenge to § 922(g)(1) by defendant with two felony convictions for sale of controlled substance); *cf. United States v. Duran*, 407 F.3d 828, 841 (7th Cir. 2005) (recognizing "the dangerous mix of guns and drugs" countered by 18 U.S.C. § 924(c)(1)(A)'s prohibition on firearm use during drug trafficking crimes). For that reason, individuals convicted of a drug

12

trafficking felony "will have a very difficult time" showing that he is not dangerous. *Williams*, 113 F.4th at 663.

Here, because Mr. Russell has a felony drug trafficking conviction and has been disarmed on that basis, he bears the burden of showing he is not dangerous individually. He may meet that burden by asking the Court to assess his dangerousness by considering his entire criminal history, including the specific felony underlying the indictment at issue. *See id.* at 659–60.

Mr. Russell argues that he is not dangerous because his felony drug trafficking conviction and subsequent misdemeanor convictions "did not involve the use of a firearm." Dkt. 48 at 28. But drug trafficking alone, even without the simultaneous use of a firearm, is "a crime that inherently poses a significant threat of danger." *Williams*, 113 F.4th at 663. Mr. Russell makes no argument that the circumstances of his felony drug trafficking or other misdemeanor convictions, aside from not using a firearm during their commission, support a finding of non-dangerousness here.

Mr. Russell does, however, makes a temporal argument—he is not dangerous because his drug trafficking conviction is twenty years old. Dkt. 48 at 28. But he does not explain how the duration of time between his predicate felony and this current indictment necessarily demonstrates that he is not dangerous. And in those intervening years, Mr. Russell was convicted of two misdemeanors, including a conviction for domestic battery less than four years ago. *See* dkt. 53 at 21 (Government's brief, citing the Probation Office's pretrial services report at dkt. 14). That relatively recent conviction for a violent

13

misdemeanor undercuts Mr. Russell's temporal argument.  Therefore, taken all together, Mr. Russell has not met his burden to show that he is not dangerous.[5]

Finally, Mr. Russell argues that there "is at least no history to support disarming those convicted of less serious or non-violent crimes."  Dkt. 48 at 27–28 (citing *Range*, 69 F.4th at 103–106; *Binderup v. Att'y Gen.*, 836 F.3d 336 (3d Cir. 2016) (en banc); *Kanter*, 919 F.3d at 451 (Barrett, J., dissenting)).  But "less serious or non-violent crimes" is not the standard.  Under *Rahimi*'s reasoning, felons at least "who have been found to pose a credible threat to the physical safety of others" may be disarmed.  602 U.S. at 700.  Mr. Russell's criminal history supports that finding of dangerousness, as discussed above.

In sum, Mr. Russell's criminal history shows that he presents a credible threat to others' physical safety under precedent applying the Second Amendment to § 922(g).  Because Mr. Russell poses such a threat, § 922(g)(1) survives his as-applied challenge.

---

[5] The parties dispute whether the facts surrounding Mr. Russell's arrest in this case support a dangerousness finding here.  *Compare* dkt. 48 at 28 (Mr. Russell's argument that when he was pulled over by police with firearms in his possession, he was moving his household possessions to a friend's house because his house had just burned down), *with* dkt. 53 at 21–22 (Government's argument that Mr. Russell had "an armory of firearms and firearms accessories," including five firearms with an obliterated or missing serial number, "a homemade suppressor," and "a machine gun conversion kit").  Since the other evidence is sufficient to resolve Mr. Russell's Second Amendment challenge, the Court need not resolve that dispute.  *See Williams*, 113 F.4th at 658 n.12 (declining to decide whether "information beyond criminal convictions" is relevant to assessing a defendant's dangerousness).

# IV.
# Conclusion

Mr. Russell's motion to dismiss his indictment is **DENIED**. Dkt. [47].

**SO ORDERED.**

Date: 1/29/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel

15